UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 07-189 (JRT/JSM) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| DEBORAH JEAN LOMAX (17), | |
| Defendant. | |

JANIE S. MAYERON, United States Magistrate Judge

The above matter came on for hearing before the undersigned upon defendant Deborah Jean Lomax's Motions for Suppression of Statements [Docket No. 451] and Suppression of all Evidence Obtained Pursuant to the Execution of a Search Warrant [Docket No. 455]. W. Anders Folk, Assistant United States Attorney, appeared on behalf of the United States of America; Wayne Nelson, Esq., appeared on behalf of the defendant, Deborah Jean Lomax, who was personally present. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

Based upon the pleadings and the pre-hearing submissions, it is recommended that Deborah Jean Lomax's Motions for Suppression of Statements [Docket No. 451] and Suppression of all Evidence Obtained Pursuant to the Execution of a Search Warrant [Docket No. 455] be DENIED.

**I.   FACTUAL BACKGROUND**

Lomax is charged with one count of Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base (crack) in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.

**II.   ANALYSIS**

   **A.   Motion to Suppress Statements**

At the hearing on the motions, counsel for Lomax stated that one non-<u>Mirandized</u> statement was taken from Lomax.  The Government has represented that it will not use that statement in its case-in-chief, and will only use it as a prior inconsistent statement if Lomax testifies.  Counsel for Lomax agreed to the Government's position.  As such, the Court recommends that Lomax's Motion to Suppress Statements be denied as moot.

   **B.   Motion to Suppress Evidence**

Lomax has challenged the searches and seizures conducted pursuant to the three court-issued warrants in these cases.  At the hearing on the pretrial motions, Lomax stated that her challenge was based solely on the four corners of the search warrant applications.  In support of her motion, she argued that the warrant affidavits did not contain sufficient information regarding the reliability of the informants.  As such, the only issue presented to the Court is whether probable cause existed on the face of each of the search warrant applications to support the issuance of the warrants.

Ordinarily, searches pursuant to a warrant are reviewed to determine if there was probable cause for the search in the search warrant application and affidavit.  <u>Illinois v. Gates</u>, 462 U.S. 213, 236 (1983).  "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that

contraband or evidence of a crime would be found in a particular place." United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000).

The task of a court issuing a search warrant is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and ' basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. In reviewing this decision of the issuing court, the duty of the reviewing court is simply to ensure that the court had a substantial basis for concluding that probable cause existed. Id. at 238-39 (citation omitted); see also United States v. LaMorie, 100 F.3d 547, 552 (8th Cir. 1996) ("Our duty as the reviewing court is to ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed, and we owe substantial deference to the determination of probable cause by the issuing judge." (citation omitted)). As to what this Court should consider when reviewing a search warrant for probable cause, "[w]hen the [issuing judge] relied solely on the affidavit presented to him, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (citing United States v Etheridge, 165 F.3d 655, 656 (8th Cir. 1999), quoting United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995)).

When informants are used to develop probable cause to support the issuance of a search warrant,

> [t]he core question . . . is whether the information is reliable. Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence. Draper v.

>United States, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959) (Draper). If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable. Gates, 462 U.S. at 233-34, 103 S.Ct. at 2329-30; Draper, 358 U.S. at 313, 79 S.Ct. at 333.

United States v. Williams, 10 F.3d 590, 594 (8th Cir. 1993).

Given these standards of review, the Court will now proceed to determine whether the search warrants at issue in this case are supported by probable cause.

November 30, 2005 Warrant

Officer Scott Creighton of the Minneapolis Police Department applied for the first warrant, and sought to search the premises located at XXXX Bryant Avenue North, Minneapolis, Minnesota.  The warrant was signed by Hennepin County District Court Judge Patricia Belois, and executed December 1, 2005.  The warrant sought narcotic drugs and controlled substances, including but not limited to cocaine, drug paraphernalia, monies and properties obtained from the illegal sales of the controlled substances, weighing and packaging materials, property bartered and traded for the controlled substances, drug notes, writings and mailings to show constructive possession of the controlled substances, firearms, ammunition, and other weapons to protect the narcotic sales operation, radio and telecommunication devices to facilitate narcotic sales, and photographic and videotape recordings of drug sales and use.  See Govt. Ex. 1.  The relevant portions of the Affidavit accompanying the search warrant described the basis for the warrant as follows:

- The affiant had been contacted within the past 72 hours by a CRI in regards to narcotics dealing at XXXX Bryant Avenue North.  The CRI stated that "Elow" and his friends were selling crack and marijuana from that address.

4

- The CRI had assisted the Minneapolis Police Department in the past in the recovery of several quantities of controlled substances, monies, and weapons which resulted in several arrests for narcotics and weapons.

- The CRI stated that they have bought crack from the address at night. The CRI stated that the selling occurs during the daytime and nighttime hours.

- The affiant conducted surveillance on the Bryant Avenue North address during the daytime and evening hours and found that a few parties walked and drove up to the front and rear of the address and left after a short period of time. The surveillance concurred with the observations of the CRI that narcotics dealing was being conducted at the address.

- The affiant met with the CRI prior to conducting a controlled buy at the Bryant Avenue North address. The CRI was searched prior to the controlled buy and given U.S. currency. The CRI was observed walking to the front door and entering the residence. The CRI stated that they were met at the door by "Elow" and were let inside. The CRI asked for a "fifty." The seller "Elow" reached into his pocket and pulled out a baggie of packaged crack and handed the CRI one rock of crack in exchange for the U.S. currency. The CRI described the seller "Elow" as a black male, 22-24 years old, light skin, 5'7, light build, with long braided hair. The CRI then returned to the affiant's location and handed over the rock of crack cocaine. The rock field-tested positive for cocaine.

- The affiant believed that the occupants of the address were likely to be involved in or are aware of the illegal activity. In the affiant's training and experience, occupants are likely to conceal on their persons and throughout the property illegal drugs, monies, weapons and stolen property traded for drugs and related contraband.

The Court finds that, while brief, the warrant application contains sufficient information from which a reasonable person could conclude that there was evidence of a crime located in the house located at XXXX Bryant Avenue North. The affidavit set forth facts establishing narcotics sales and tied them to the house. In particular, the affiant received a tip from a CRI that narcotics were being dealt out of the house, the

affiant himself observed activities consistent with drug dealing at the house, and the CRI conducted a controlled buy of illegal narcotics in the house.

The Court also finds that the CRI's information was corroborated and therefore reliable.  Here, Officer Creighton stated that the CRI had previously assisted the Minneapolis Police Department in the past.  After receiving the CRI's tip, Officer Creighton independently conducted surveillance of the residence, and observed activities consistent with the CRI's reports.  The CRI subsequently met with Officer Creighton in person and performed a controlled buy.  See United States v. LaMorie, 100 F.3d 547, 553 (8th Cir. 1996) ("personal contact with an informant can strengthen an officer's decision to rely on the information provided").  The Court finds that all of this is sufficient to establish the reliability of the information provided in the affidavit.  An officer "may rely upon information received through an informant…so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge," Gates, 462 U.S. at 241 (quoting Jones v. United States, 362 U.S. 257, 269, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)).  Here, Officer Creighton independently corroborated the CRI's tip and included that information in the affidavit.  Based upon the totality of the circumstances, the Court finds that substantial evidence existed to support the finding of probable cause to issue the search warrant for the house.

January 25, 2006 Warrant

Officer David Ligneel of the Minneapolis Police Department applied for the second warrant in this case.  The warrant was signed by Hennepin County District Court Judge Patricia Belois on January 25, 2006 and executed the same day.  The warrant sought to search the premises of XXXX Bryant Avenue North (the same address as the

first warrant) and the persons of Johnny Joe Longs and Eloe Lomax. The warrant sought narcotic drugs and controlled substances, including but not limited to cocaine, drug paraphernalia, monies and properties obtained from the illegal sales of the controlled substances, weighing and packaging materials, property bartered and traded for the controlled substances, drug notes, writings and mailings to show constructive possession of the controlled substances, firearms, ammunition, and other weapons to protect the narcotic sales operation, radio and telecommunication devices to facilitate narcotic sales, and photographic and videotape recordings of drug sales and use. See Govt. Ex. 2. The relevant portions of the Affidavit accompanying the search warrant described the basis for the warrant as follows:

- The affiant was contacted by a CRI who stated there were two black males known as "Johnny Blaze" and "E-low" who were selling crack cocaine out of their residence at XXXX Bryant Avenue North. The affiant had knowledge that a narcotics search warrant was executed on this address on December 1, 2005 and two handguns and crack cocaine were recovered. XXXX is the lower unit of a duplex.

- The affiant was told by the CRI that he had seen "E-low" within the past month to be in possession of a black revolver, and when the CRI saw "E-low" with the gun there was also another male inside the residence, who frequented the address, who had a silver semi-automatic 9mm. "E-low" and the other male pulled their guns out of their waist bands at the same time and were comparing them.

- The CRI told the affiant that he had seen both "E-low" and "Johnny Blaze" inside XXXX Bryant Avenue North on numerous occasions in possession of and selling crack cocaine to various people who came to the front door of the residence within the past two weeks.

- The affiant was contacted by the same CRI who told him that he had been inside XXXX Bryant Avenue North within the past 72 hours and had seen "Johnny Blaze" and "E-low" in possession of a large quantity of crack cocaine. The CRI also stated that they were selling the crack cocaine to various people who would come to the front door of the residence.

7

- Through CAPRS reports the affiant learned that "E-low" is Eloe Aki Lomax and his address is XXXX Bryant Avenue North. Eloe Lomax was present during the search warrant executed on December 1, 2005 and has a lengthy record of narcotics arrests. He was considered as a suspect in a 2001 homicide and a possible suspect in a shooting that occurred in 1996.

- Through CAPRS the affiant learned that "Johnny Blaze" is Johnny Joe Longs. The affiant printed booking photographs of Lomax and Longs and the CRI positively identified them as being "Johnny Blaze" and "E-low."

- The CRI has furnished reliable and accurate information in the past and his/her information has led to the issuance of search warrants and the seizure of controlled substances and weapons. The CRI's previous information has also led to the conviction of numerous others for narcotics related crimes.

- The affiant believed that the occupants of the address were likely to be involved in or are aware of the illegal activity. In the affiant's training and experience, occupants are likely to conceal on their persons and throughout the property illegal drugs, monies, weapons and stolen property traded for drugs and related contraband.

- The affiant requested an unannounced entry to help ensure the safety of the officers entering the residence because "E-low" and another male inside the residence were seen in possession of guns, and because the objects of the search are easily disposed of by throwing or flushing, an unannounced entry could help prevent the loss or destruction of evidence.

The Court finds that the warrant application contains sufficient information from which a reasonable person could conclude that there was evidence of a crime located in the house located at XXXX Bryant Avenue North or on the persons of Johnny Joe Longs and Eloe Lomax. Officer Ligneel stated that the CRI had previously provided reliable information. The affidavit set forth information that crack cocaine was being sold out of the residence, and that a previous search warrant had resulted in the recovery of two handguns and crack cocaine from that residence. The affidavit also

contained information that within the past 72 hours, a CRI had been inside the residence and observed Johnny Joe Longs and Eloe Lomax in possession of a large quantity of crack cocaine. The personal observation of the CRI tends to show that the information is reliable. See United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (finding sufficient probable cause where informant had personally discovered evidence of a crime and provided police with a detailed description) (citing Florida v. J.L., 529 U.S. 266, 270 (2000)) (explaining that "a known informant . . . can be held responsible if her allegations turn out to be fabricated") and citing United States v. Jackson, 898 F.2d 79, 81 (8th Cir. 1990) (finding adequate basis of informant's knowledge where anonymous informant's tip provide the "richness and detail of a first hand observation")); United States v. Gabrio, 295 F.3d 880, 883 (8th Cir. 2002) (concluding that an informant's information was reliable in part because "[t]he tip here was timely and 'based on the informant's first-hand observations, not merely from rumor or innuendo,'" and the affiant "had an opportunity to assess the informant's credibility because he gave his tip in person.") (citations omitted); United States v. Williams, 10 F.3d 590, 594 (8th Cir. 1993) (finding informant's information credible because it was based on his first-hand observations, not merely from rumor or innuendo."). The Court finds that based on the totality of the circumstances, there was probable cause to issue the second search warrant for the residence located at XXXX Bryant Avenue North.

September 21, 2006 Warrant

Officer Scott Creighton of the Minneapolis Police Department applied for the final warrant, and sought to search the premises located at XXXX Emerson Avenue North, Minneapolis, Minnesota. The warrant was signed by Hennepin County District Court

Judge Patricia Belois on September 21, 2006 and executed on September 27, 2006. The warrant sought narcotic drugs and controlled substances, including but not limited to cocaine, drug paraphernalia, monies and properties obtained from the illegal sales of the controlled substances, weighing and packaging materials, property bartered and traded for the controlled substances, drug notes, writings and mailings to show constructive possession of the controlled substances, firearms, ammunition, and other weapons to protect the narcotic sales operation, radio and telecommunication devices to facilitate narcotic sales, and photographic and videotape recordings of drug sales and use. See Govt. Ex. 3. The relevant portions of the Affidavit accompanying the search warrant described the basis for the warrant as follows:

- Within the past two weeks, the affiant was contacted by a CRI, who stated that a black male nicknamed "Eloe" and another seller "Pedro" were selling crack from the address at XXXX Emerson Avenue North. The CRI stated that the seller's mom stays at the address and that the seller "Pedro" has a gun for protection at that address. The CRI also stated that they store the crack in the basement area.

- The CRI stated that "Pedro" lives at the address with his girlfriend and mother and that "Pedro's" brother "Eloe" also sells crack from the address. The CRI stated that they sell during the day and nighttime hours.

- The CRI has assisted the Minneapolis Police Department in the past in the recovery of several quantities of controlled substances, monies and weapons which resulted in several arrests for narcotics and weapons.

- The affiant discovered during his investigation that the true name of "Eloe" is Eloe Lomax, who has been arrested in the past for narcotics. On December 1, 2005, the affiant executed a narcotics search warrant during which Eloe Lomax was arrested for narcotics and weapons and two guns were recovered at the residence. Also, during the execution of the warrant, the mother Debra Lomax was present and lived at that address. The affiant also found out that the mother Debra Lomax lists to XXXX Emerson Avenue North.

- The affiant conducted surveillance on XXXX Emerson Avenue North during the daytime and nighttime hours and found that several parties walked and drove up to the front, side and rear and entered through the front door of that address and left after a short period of time.  The surveillance concurred with observations of the CRI that narcotics dealing were being conducted at that address.

- Within the last two weeks the affiant met with the CRI to conduct a controlled buy at XXXX Emerson Avenue North.  The CRI was searched and given U.S. Currency.  The CRI knocked on the rear door of XXXX Emerson Avenue North and was escorted inside by "Pedro's" girlfriend.  The CRI stated that once inside, they walked upstairs and the CRI stated they asked for one.  "Pedro" went downstairs to the basement and returned and handed the CRI a rock of crack in exchange for the U.S. Currency.  The CRI described the seller as a black male, 33-34 years old, 5'7, dark skinned, and thinly built with braided hair.  The CRI returned to the affiant and handed over the rock of crack.  The crack cocaine later field-tested positive.

- Within the past 72 hours, the CRI informed the affiant that they saw "Pedro" with a large amount of crack packaged for sale, and that "Pedro" also delivers crack to XXXX Bryant Avenue North to another seller nicknamed "KD."  The CRI stated this happened during the nighttime hours.

- The affiant believed that the occupants of the address were likely to be involved in or were aware of the illegal activity.  In the affiant's training and experience, occupants are likely to conceal on their persons and throughout the property illegal drugs, monies, weapons and stolen property traded for drugs and related contraband.

- The affiant requested a nighttime search because he learned that the narcotics selling occurred during the nighttime hours.  He also requested an unannounced entry to protect officer safety and prevent the destruction of the objects of the search because he had seen "Pedro" with a handgun, which could slow officers from attempting entry and allow for time to destroy controlled substances.

The Court finds that the affidavit contains application contains sufficient information from which a reasonable person could conclude that there was evidence of

11

a crime located in the house located at XXXX Emerson Avenue North. The affidavit sets forth information regarding dealing of crack cocaine and ties it to that residence. In particular, the affidavit states that a CRI, who had previously provided reliable assistance to the Minneapolis Police Department, gave information that crack was being dealt out of the Emerson Avenue North house and that Eloe was one of the people who sold it there. The affiant knew that Eloe had been arrested during the execution of the December 1, 2005 warrant at the Bryant Avenue North house, during which handguns and crack had been recovered. The affiant learned that Eloe's mother listed to the Emerson Avenue North address, and conducted independent surveillance during which he observed activities consistent with the observations of the CRI that narcotics were being dealt from that address. The CRI engaged in a controlled buy, during which the CRI successfully purchased crack cocaine from "Pedro" at the Emerson Avenue North address. On another date, the CRI saw "Pedro" with a large amount of crack packaged for sale. Finally, the CRI stated that "Pedro" delivered crack to the Bryant Avenue North address. The affidavit contains a fair amount of information from a CRI, and the affiant corroborated the information through independent surveillance and through a controlled buy. As such, the Court finds that based on the totality of the circumstances, the affidavit contains probable cause to issue the warrant.

In summary, the three search warrant applications and supporting affidavits executed in this case all supported probable cause to believe that evidence of a crime would be found in the places to be searched. As such, the Court recommends that Lomax's motions to suppress the evidence seized pursuant to these warrants be denied.

RECOMMENDATION

For the reasons set forth above, it is recommended that:

1. Defendant's Motion for Suppression of Statements [Docket No. 451] be DENIED.

2. Defendant's Motion for Suppression of all Evidence Obtained Pursuant to the Execution of a Search Warrant [Docket No. 455] be DENIED.

Dated: January 11, 2008

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **January 28, 2008** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

13